**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

GUILLERMO A. BERMAN; ELIANI
BERMAN; and CEBOTECH, INC.,

      Plaintiffs,

vs.                                            Case No. 6:12-cv-405-Orl-37KRS

WELLS FARGO BANK, N.A.,

      Defendant.

## ORDER

This cause is before the Court on the following:

1.     Defendant's Motion for Summary Judgment (Doc. 19), filed July 20, 2012;

2.     Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. 27), filed August 10, 2012; and

3.     Defendant's Reply to Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment (Doc. 30), filed August 27, 2012.

Upon consideration, the Court hereby grants in part Defendant's Motion for Summary Judgment, for the reasons set forth below.

## BACKGROUND[1]

In 1998, Plaintiff Guillermo Berman, then the Vice President of Vantaage, Inc., accepted a line of credit on its behalf with Defendant Wells Fargo. (Doc. 20, ¶¶ 3–4.) Mr. Berman personally guaranteed the line of credit in his individual capacity.[2]

---

[1] The following factual allegations, derived from the record, are construed in the light most favorable to Plaintiffs; the actual facts of the case may be different from those stated here. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).

[2] The pertinent provision reads: "I also, in my individual capacity (even though I

(Doc. 20-1, p. 2.) He later transferred his interest in Vantaage to the company's President and resigned from the company. (Doc. 12, ¶ 9.)

In May 2000, Mr. Berman became President of Plaintiff Cebotech, Inc., and opened a bank account with SouthTrust Bank on behalf of Cebotech. (*Id.* ¶¶ 12–13.) At that time, Mr. Berman[3] signed a one-page deposit agreement stating, *inter alia*, "The depositor named below hereby agrees to abide by and be bound by the Bank's Rules and Regulations Governing Deposit Accounts." (Doc. 19-3, p. 1.) In 2005, SouthTrust Bank merged into Wachovia. (Doc. 21, ¶ 3.)

In August 2008, Mr. Berman and his wife, Plaintiff Eliani Berman, opened a checking account with Defendant's predecessor Wachovia. (Doc. 12, ¶ 11.) At that time, the Bermans each signed a one-page deposit agreement stating, *inter alia*, "I agree to be bound by the terms and conditions including but not limited to Wachovia's Deposit Agreement and Disclosures." (Doc. 19-1, p. 1; Doc. 19-2, p. 1.) In March 2010, Wachovia merged into Defendant Wells Fargo. (Doc. 21, ¶ 2.)

In June 2010, Vantaage defaulted on the line of credit that Mr. Berman had personally guaranteed twelve years earlier. (Doc. 20, ¶ 7.)

On June 11, 2011, Plaintiffs' accounts converted to Wells Fargo accounts as part of the Wachovia/Wells Fargo merger. (Doc. 21, ¶ 10.) Defendant asserts that it sent Plaintiffs copies of "Disclosure Booklets," which were addendums to the previously signed deposit agreements that Plaintiffs signed when they opened their accounts.

---

may place a title or other designation next to my signature), jointly and severally unconditionally guarantee and promise to pay to [Defendant] all indebtedness of [Vantaage] at any time arising under or relating to this application." (Doc. 20-1, p. 2.) Plaintiffs concede that Mr. Berman was personally liable on the line of credit. (Doc. 27, p. 4.)

[3] There is some dispute as to whether the Cebotech account is owned by Mr. Berman individually or by Cebotech as an entity. (Doc. 21, ¶ 20; Doc. 27, p. 10.)

(Doc. 21, ¶ 11; Doc. 19-1, p. 2.) These Disclosure Booklets contain setoff provisions, the scope of which is a matter in dispute.[4] It is unclear precisely when Defendant mailed these Booklets. Plaintiffs dispute that they received the Disclosure Booklets and maintain that they did not agree to be bound by the setoff provisions contained in them. (Doc. 27, pp. 6–7.)

On July 28, 2011, less than two months after the accounts were converted to Wells Fargo, Defendant setoff money from Plaintiffs' accounts in order to satisfy the amount owed under Vantaage's line of credit. (Doc. 19, p. 4.) Defendant withdrew approximately $21,000 from the Cebotech account and $8,500 from the Bermans' joint account. (Doc. 12, ¶¶ 14–15.)

These withdrawals caused the accounts to have negative balances. (*Id.* ¶ 18.) Plaintiffs allege that Defendant then began making "harassing . . . communications" to the Bermans' home "demanding that Plaintiffs make up the shortage in the bank

---

[4] The first provision, entitled "Security Interest; The Bank's Right To Setoff," provides:

> To secure your performance of this Agreement, . . . you acknowledge that the Bank may setoff against any accounts you own at the Bank . . . for any obligation you owe the Bank at any time and for any reason as allowed by the laws governing your Account. These obligations include both secured and unsecured debts and debts you owe individually or together with someone else. The Bank may consider this Agreement as your consent to the Bank's . . . exercising its right of setoff should any laws governing your Account require your consent.

(Doc. 19-1, p. 14.) The second provision, entitled "Joint Liability," provides:

> If there is an Overdraft to your Account, you are each individually and jointly liable for the amount, regardless of who caused or benefited from the Overdraft. If there is a setoff . . . , affecting any co-owner, the Bank has the right to treat all funds in the Account as belonging to the person against whom the setoff . . . is directed.

(Doc. 19-1, p. 16.)

3

accounts." (*Id.* ¶ 19.)

In May 2012, Plaintiffs filed the Amended Complaint, claiming conversion (Count I), restitution (Count II), negligence (Count III), breach of contract (Count IV), wrongful setoff (Count V), intentional infliction of emotional distress (Count VI), violations of the Fair Debt Collection Practices Act (FDCPA) (Count VII), and civil theft (Count VIII). (*Id.*) Defendant now moves for summary judgment. (Doc. 19.) This matter is ripe for the Court's adjudication.

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006).

## DISCUSSION

### I. FDCPA

Defendant argues that it is not a debt collector within the ambit of the FDCPA. (Doc. 19, pp. 15–18.) "The FDCPA imposes liability on 'debt collectors' who fail to comply with its provisions when collecting a 'debt.'" *Buckman v. Am. Bankers Ins. Co. of Fla.*, 115 F.3d 892, 894–95 (11th Cir. 1997). However, "not all who collect debts are 'debt collectors' for purposes of the Act." *Harris v. Liberty Cmty. Mgmt., Inc.*, No. 11-14362, 2012 WL 6604518, at *3 (11th Cir. Dec. 19, 2012). A "debt collector" under the

FDCPA's definition is one who "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Put more simply, "[a] party qualifies as a debt collector where it operates a business that has the principal purpose of collecting debts or regularly attempts to collect debts that are owed to another." *Goia v. CitiFinancial Auto*, No. 12-12639, 2012 WL 6013206, at *6 (11th Cir. Dec. 3, 2012).

Where a financial company is "engaged in the collection of its own debts, as opposed to the debts of another," it does "not qualify as a debt collector under the FDCPA." *Id.* (affirming the district court's grant of summary judgment and dismissal of an FDCPA claim in favor of a financial company that attempted to collect on the costs owed to it under a defaulted finance contract). Furthermore, the statute excludes "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor" from the definition of "debt collector." 15 U.S.C. § 1692a(6)(A).

Thus, the statute breaks "debt collectors" into two categories: (1) businesses whose principal purpose is collecting debts; and (2) those who regularly attempt to collect the debts of others. *Goia*, 2012 WL 6013206, at *6. Specifically, the first category states that debt collectors "use any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6).

Plaintiffs do not allege that Defendant meets either of those two categorical definitions as stated. Instead, Plaintiffs' principal argument appears to rely on a misreading of the statutory language: they contend that because they "allege[] improper use by [Defendant] of an instrumentality of commerce (the telephone) for the principal

5

purpose of collecting a debt," that is sufficient to meet the first categorical definition.[5] (Doc. 27, pp. 17–18.) As the statutory language teaches and *Goia* confirms, however, the first definition requires that the principal purpose of the *business* be the collection of debts; the fact that the particular *use* of a commercial instrumentality (that is, the phone call) was principally directed toward debt collection is inapposite.

Plaintiffs concede that Defendant was attempting to collect its own debt and thus does not fall under the second categorical definition. (*Id.* at 17.) However, for Defendant to fall within the first categorical definition, its principal purpose as a business must be the collection of debts, which Plaintiff does not allege and which is not the case for Wells Fargo, a large nationwide bank. *See, e.g.*, *Woods v. Wells Fargo Fin. Bank*, 753 F. Supp. 2d 784, 791 (S.D. Ind. 2010) ("Wells Fargo is a bank creditor that was seeking collection on a debt owed to it. . . . Accordingly, Wells Fargo is not a debt collector under the FDCPA, and Plaintiff's FDCPA claim must be dismissed."); *Marketic v. U.S. Bank Nat'l Ass'n*, 436 F. Supp. 2d 842, 854 (N.D. Tex. 2006) ("US Bank contends that as a national banking concern it cannot be found liable under the FDCPA since its principal business activity is not debt collection. The Court agrees. US Bank's principal business activity is not debt collection, and, even if the company were to meet the statutory definition of a debt collector, it would nevertheless qualify for the statutory exclusion from liability . . . for creditors who attempt to collect debts owed to them while using their own names." (citations and internal quotation marks omitted)); *Thomasson v.*

---

[5] Plaintiffs' reliance on *Izenberg v. ETC Services, LLC*, 589 F. Supp. 2d 1193, 1198–99 (C.D. Cal. 2008), in support of this proposition is misplaced. The *Izenberg* court found the first category to be defined as "a person the principal purpose of whose business is the collection of debts (whether on behalf of himself or others)." *Id.* at 1199 (internal quotation marks omitted). This re-phrasing makes clear that the words "principal purpose" in the statutory clause refer to "business," not to "use."

*Bank One, La., N.A.*, 137 F. Supp. 2d 721, 724 (E.D. La. 2001) ("Bank One is not a 'debt collector' because as a bank it primarily loans money to consumers rather than collects outstanding debts."). Furthermore, even if Defendant fell within the first category, it would be excluded from the statutory definition as a creditor attempting to collect its own debt—the shortages in the bank accounts (Doc. 27, p. 18). *See* 15 U.S.C. § 1692a(6)(A); *see also Woods*, 753 F. Supp. 2d at 791; *Marketic*, 436 F. Supp. 2d at 854.

The Court accordingly finds that Defendant is not a "debt collector" in this case. Therefore, the FDCPA is inapplicable, and Plaintiffs' FDCPA claim (Count VII) fails as a matter of law.

## II.  State Law Claims

Other than the FDCPA claim, Plaintiffs' remaining counts are state law claims (conversion, restitution, negligence, breach of contract, wrongful setoff, intentional infliction of emotional distress, and civil theft). Because Plaintiffs have no surviving federal claims and have established no other basis for federal jurisdiction,[6] the Court declines to exercise supplemental jurisdiction over the state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Therefore, the remaining counts are hereby dismissed *sua sponte*.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Motion for Summary Judgment (Doc. 19) is **GRANTED** in part as to Count VII (FDCPA), which is **DISMISSED WITH PREJUDICE**.

---

[6] The Court notes that Plaintiffs have not adequately demonstrated the existence of diversity jurisdiction because they have not sufficiently pled complete diversity and the requisite amount in controversy. *See* 28 U.S.C. § 1332(a).

       Plaintiffs shall take nothing as to Count VII.

2. Counts I through VI and Count VIII are **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk is **DIRECTED** to close this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 11, 2013.

 

                                        ROY B. DALTON JR.
                                        United States District Judge

Copies:

Counsel of Record